1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RYAN D. LAPIDUS (Bar No. 196838)
Email: ryan@lapiduslaw.com
DANIEL C. LAPIDUS (Bar No. 227170)
Email: dan@lapiduslaw.com
JIM D. BAUCH (Bar No. 199454)
Email: jim@lapiduslaw.com
LAPIDUS & LAPIDUS
A PROFESSIONAL LAW CORPORATION
177 SOUTH BEVERLY DRIVE
BEVERLY HILLS, CALIFORNIA 90212
TEL: 310-550-8700
FAX: 310-943-2471

Attorneys for Plaintiffs
Axiom Foods, Inc. and Growing Naturals, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXIOM FOODS, INC., a California corporation,; GROWING NATURALS, LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>ACERCHEM INTERNATIONAL, INC., an entity of unknown origin; and ACERCHEM UK LIMITED, a United Kingdom limited company,<br><br>Defendants. | CASE NO.:  CV15-870-PA (AJWx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ACERCHEM UK LIMITED'S MOTION TO DISMISS**<br><br>[Declarations of Kay Abadee, Heather Szucs, Jonathan Reed Powell; and Objection to Declaration of Donald Tang filed concurrently]<br><br>Hearing<br>Date: July 6, 2015<br>Time: 1:30 p.m.<br>Courtroom: 15<br>Judge: Hon. Percy Anderson |

1

**TABLE OF AUTHORITIES**

2
Page

3
                                       <u>Cases</u>

4

5  *Amini Innovation Corp. v. JS Imports Inc.*,

6        497 F.Supp.2d 1093 (C.D. Cal. 2007) ................................. 8

7  *Archdiocese of Milwaukee v. Superior Court*,

8        112 Cal.App.4th 423, 5 Cal.Rptr.3d 154 (2003) .............................. 11

9  *Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ........................................ 14

10 *Bancroft & Masters, Inc. v. Augusta National Inc.*,

11       223 F.3d 1082 (9th Cir. 2000) ........................................ 9, 10

12 *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ................................ 13

13 *Brainerd v. Governors of the University of Alberta*,

14       873 F.2d 1257 (9th Cir. 1989) ........................................ 11

15 *Brayton Purcell LLP v. Recordon & Recordon*,

16       606 F.3d 1124 (9th Cir. 2010) ........................................ 8

17 *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126 (9th Cir. 1995) .......... 17

18 *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*,

19       106 F.3d 284 (9th Cir. 1997) .................................... 7, 8, 15

20 *Consulting Engineer Corp. v. Geometric Ltd.*,

21       561 F.3d 273 (4th Cir. 2009) ........................................ 12

22 *CYBERsitter, LLC v. People's Republic of China*,

23       805 F.Supp.2d 958 (C.D. Cal. 2011) ................................. 10

24 *Data Gen. Corp. v. Grumman Sys. Support Corp*,

25       825 F.Supp. 340 (D. Mass 1993) ................................. 17

26 *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ................... 10

27 *Fenn v. Mleads Enterprises, Inc.*, 137 P.3d 706 (Utah 2006) ................... 12

28

1

*Global Fresh, Inc. v. ASICA Natural SAC,*

    2015 WL 1486946 (C.D. Cal. 2015) .......................................... 7, 9, 14

*Gordy v. Daily News, L.P.*, 95 F.3d 829 (9th Cir. 1996) ............................ 15

*Jefferson Airplane v. Berkeley Systems, Inc.,*

    886 F.Supp. 713 (N.D. Cal. 1994) ............................................... 18, 19

*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*

    647 F.3d 1218 (9th Cir. 2011) ............................................................ 8

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*

    243 F.Supp.2d 1073 (C.D. Cal. 2003) ................................ 6, 8, 13, 16

*Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990) ........... 9

*Schwarzenegger v. Fred Martin Motor Co.,*

    374 F.3d 797 (9th Cir. 2004) ...................................................... 7, 13

*Sleep Science Partners v. Lieberman,*

    2009 WL 4251322 (N.D. Cal. 2009) ......................................... 10, 14

*Valley Entertainment, Inc. v. Friesen,*

    691 F.Supp.2d 821 (N.D. Ill. 2010) ........................................... 18, 19

*Washington Shoe Co. v. A-Z Sporting Goods Inc.,*

    704 F.3d 668 (9th Cir. 2012) ................................................. 7, 10, 11

*Whimsicality, Inc. v. Rubie's Costume Co.,*

    891 F.2d 452 (2d Cir. 1989) ........................................................... 18

### Statutes

17 U.S.C. § 410(a) ............................................... 17

17 U.S.C. § 408(c)(1) ........................................... 18

Code of Civ. Proc. § 410.10 ................................... 6

Fed. R. Civ. P. 4(k)(2) ........................................ 15

### Treatises

Melville B. Nimmer, Nimmer on Copyright, § 721[A] ............. 17

# I.     INTRODUCTION

The Motion to Dismiss filed by Acerchem UK Limited ("Acerchem") is without merit.

Acerchem's challenge to personal jurisdiction curiously fails to address a long line of Ninth Circuit authority that holds that personal jurisdiction may be asserted in California when a defendant is alleged to have intentionally infringed the copyright of a California plaintiff, knowing that the plaintiff is located or does significant business in California.  Here, Acerchem is alleged to have intentionally infringed Plaintiffs' copyrights, and the declarations filed with this Opposition show that there can be no dispute that Acerchem knows that Plaintiffs are California businesses.

Indeed, Acerchem entirely ignores the "purposeful direction" or "effects" test that Ninth Circuit courts apply in tort cases, instead arguing the "purposeful availment" test generally used for contract actions.  But even under that standard, Acerchem would lose, because Acerchem has availed itself of the privileges of doing business in California in many ways, including but not limited to claiming – *in the very email that is the subject of the Complaint* – to have a Los Angeles office, as well as shipping the same type of products advertised in that email through the Port of Los Angeles and Port of Long Beach, attending trade shows in Anaheim, and sending product samples to Plaintiffs in California.

Nor has Acerchem made the "compelling" showing required to demonstrate that the exercise of jurisdiction by this Court would be unreasonable.  Acerchem offers little on that subject other than that – like every defendant – it would prefer to litigate at home.

Acerchem's 12(b)(6) motion is also without merit.  Contrary to Acerchem's assertions, Plaintiffs' copyright registrations can and do cover artwork, as the Copyright Office's own Application Form shows.  Accordingly, there is no basis on which the claims can be dismissed.

For these reasons, and as set forth below, the Court should deny the Motion.

## II.     THE COURT HAS PERSONAL JURISDICTION OVER ACERCHEM

For purposes of this motion, Plaintiffs do not contend that Acerchem is subject to general jurisdiction in California, though, as shown below, Acerchem's Motion and the supporting declaration severely understate the extent of both Acerchem and Acerchem International's business contacts with California.

However, specific jurisdiction clearly exists, because Acerchem has committed tortious acts purposefully directed at these California plaintiffs, and has purposefully availed itself of the privilege of doing business in California in connection with the marketing and sale of rice protein products.

### A.     Legal Standard

California's long arm statute is the broadest available, authorizing the exercise of personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States."  Cal. Code of Civil Proc. § 410.10.

"[T]he plaintiff need only make a prima facie showing of jurisdiction to survive a jurisdictional challenge on a motion to dismiss where, as here, a court has not heard testimony or made findings of fact."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 243 F.Supp.2d 1073, 1082 (C.D. Cal. 2003).

"The Ninth Circuit has developed a three-part test for assessing the exercise of specific personal jurisdiction over a party:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Global Fresh, Inc. v. ASICA Natural SAC*, 2015 WL 1486946 (C.D. Cal. 2015), citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).

Typically, the first prong is evaluated under a "purposeful direction" analysis for tort actions, and under a "purposeful availment" analysis for contract actions. As shown below, Plaintiffs have met this prong under either analysis.

## B.   By Intentionally Misappropriating the Intellectual Property of California Businesses, Acerchem "Purposefully Directed" Its Tortious Conduct At California

Acerchem's motion ignores a plethora of Ninth Circuit authority holding that intentional infringement of the copyright of a plaintiff known to reside or do business in the forum state is itself sufficient to confer jurisdiction.

In *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668 (9th Cir. 2012), the Ninth Circuit addressed "whether an Arkansas retailer is subject to personal jurisdiction in Washington when its *only* relevant contact with the state is a claim that it willfully violated a copyright held by a Washington corporation." *Id.* at 670 (emphasis added). The Ninth Circuit reversed the trial court's dismissal, finding that the copyright violation itself was sufficient grounds for jurisdiction. *Washington Shoe* discussed and relied upon a long line of Ninth Circuit authority reaching similar results.

For example, in *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998), "Columbia alleged, and the district court found, that Feltner willfully infringed copyrights owned by Columbia, which, as Feltner knew, had its

principal place of business in the Central District.  This fact alone is sufficient to satisfy the 'purposeful availment' requirement."  *Id.* at 289.  *See also Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124 (9th Cir. 2010) (defendant law firm that allegedly copied section of plaintiff's website and posted it on its own website was subject to personal jurisdiction in plaintiff's home district); *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) (defendant who posted plaintiff's photographs without permission was subject to personal jurisdiction in California); *Metro-Goldwyn-Mayer*, 243 F.Supp.2d at 1088 ("jurisdiction typically is appropriate where a foreign defendant engages in significant infringement of a resident's intellectual property, and knows where the harm from that infringement is likely to be suffered."); *Amini Innovation Corp. v. JS Imports Inc.*, 497 F.Supp.2d 1093, 1106 (C.D. Cal. 2007) ("the Ninth Circuit has held that specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing it was located in the forum state.").

Here, Plaintiffs have alleged that Acerchem willfully infringed on their intellectual property.  *See* Complaint, ¶¶ 12-13 and Ex. G.  Acerchem's infringement was hardly accidental or mere negligence:  it blatantly plagiarized graphics and text from Plaintiffs' own websites and/or marketing materials.  *See id.*, ¶¶ 19, 26.

In doing so, Acerchem purposefully directed a tortious act at California, where Plaintiffs are headquartered in and do significant business in California.  *See id.*, ¶ 4; Declaration of Kay Abadee, ¶ 4.  Acerchem cannot plead ignorance of Plaintiffs' location.  First, Plaintiffs are leaders in the industry and are very well-known.  *See* Abadee Decl., ¶¶ 2-4.  Second, the web sites and email newsletters from which Acerchem copied list Plaintiffs' California offices.  *See id.*, ¶¶ 5-8 and Exs. A-D.

Furthermore, Acerchem employees have met Plaintiffs' personnel in person in California, communicated with them by email, and even shipped product samples to Plaintiffs in California.  *See id.*, ¶¶ 9-14 and Exs. E-J; Declaration of Heather Szucs, ¶ 2-9 and Exs. A-H.[1]

Thus, Acerchem knew that its tortious act would have effects in California, satisfying the purposeful direction prong.  *See Global Fresh*, 2015 WL 1486946 at *5 ("the creation and transmission of these allegedly false documents to Global, in addition to the alleged misrepresentations made during telephone calls between Morales and Global, which Morales knew was located in Los Angeles, would constitute intentional acts expressly aimed at Global in Los Angeles which Morales knew would be likely to be suffered in Los Angeles.").

Acerchem's motion simply ignores the effects doctrine and the purposeful direction test, arguing only the "purposeful availment" form of the test even though it is not the form applied to tort cases.  *See* Motion, pp. 6-7.  In any event, Acerchem's arguments have no merit.  The fact that "only" 3% of the recipients of the Infringing Email were located in California is irrelevant:  under the effects doctrine, Acerchem would be liable even if *none* of the recipients were located there.  *See Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990) (Alabama resident who wrote letter to insurance company claiming she was entitled to payment that actually belonged to California resident was subject to jurisdiction in California regardless of where letter was sent); *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (Georgia golf

_____

[1] Although not all of the above communications are identified as being from Acerchem U.K. specifically, that entity and Acerchem International appear to share at least some employees, including defendants' declarant Donald Tang, and many of the documents list or refer to both entities.  *See, e.g.*, Abadee Decl., Ex. E (referencing Acerchem's "UK channel"), Ex. H (listing Acerchem UK's web site), and Ex. J (email from Elva Li, admitted by Mr. Tang to be an Acerchem UK employee, listing various other Acerchem entities).

_____

1   club's letter to Virginia-based domain name registrar was sufficient to confer
2   jurisdiction in California because it challenged California company's right to
3   internet domain name; "[t]he letter was expressly aimed at California because it
4   individually targeted B&M, a California corporation doing business almost
5   exclusively in California."); *CYBERsitter, LLC v. People's Republic of China*, 805
6   F.Supp.2d 958, 970 (C.D. Cal. 2011) ("Defendants converge on the position that
7   express aiming did not occur because, even if Plaintiff's allegations are true,
8   Defendants did nothing above and beyond willfully infringing Plaintiff's copyright
9   with the knowledge that Plaintiff resided in California.  Defendants contend that
10  they did not distribute or market their allegedly infringing markets in California, or
11  otherwise compete with Plaintiff in California.  That position, however, runs afoul
12  of *Calder* and . . . disregards the Ninth Circuit's holding in *Columbia Pictures* . . .
13  that an allegation of a defendant's willful copyright infringement against a plaintiff
14  with knowledge of plaintiff's principal place of business satisfies the *Calder*
15  effects test.") (citations omitted).
16      By infringing Plaintiffs' copyrights, Acerchem caused injury to Plaintiffs
17  that it knew would be felt by Plaintiffs in California.  *See Dole Food Co., Inc. v.*
18  *Watts*, 303 F.3d 1104 (9th Cir. 2002) (defendants who fraudulently induced
19  California plaintiff to enter into unfavorable warehouse leases in the Netherlands
20  caused harm in California for purposes of effects test; reversing district court's
21  grant of motion to dismiss); *Washington Shoe*, 704 F.3d at 678 ("When the
22  infringer intentionally interferes with the holder's copyright, he strikes at the heart
23  of the rights conferred by the Copyright Act, the holder's right to control his
24  copyright on his own terms."); *Sleep Science Partners v. Lieberman*, 2009 WL
25  4251322, *3 (N.D. Cal. 2009) (defendant who "obtained Plaintiff's trade secrets
26  from . . . a California resident, intentionally copied Plaintiff's trade dress and
27  business methods, and intentionally advertised and sold products in California in
28  direct competition with Plaintiff" satisfied effects test and was subject to

jurisdiction in California; "By allegedly misappropriating trade secrets from Lieberman and infringing on Plaintiff's trade dress and copyright, Sleeping Well expressly targeted Plaintiff's business in California and caused foreseeable harm to it in California.").

It is also irrelevant that Acerchem claims that the employee who sent the infringing email did so outside of California. *See Washington Shoe,* 704 F.3d at 673 ("courts may exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside of the forum state.").

Even under the "purposeful availment" standard, specific jurisdiction would exist. Acerchem's characterization of its conduct as a mere "single online act that may only fortuitously and peripherally involve California," Motion, p. 7, misstates both the law and the facts. First, even assuming that Acerchem's contact with California consists only of the single Infringing Email, a single act can be sufficient to constitute purposeful availment. *See Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (Canadian defendant who allegedly defamed Arizona plaintiff during a single phone call was subject to personal jurisdiction in Arizona; "It is the quality of these contacts, however, and not the quantity, that confers personal jurisdiction over a defendant."); *Archdiocese of Milwaukee v. Superior Court*, 112 Cal.App.4th 423, 442, 5 Cal.Rptr.3d 154 (2003) (out-of-state entity could be held liable in California for damages resulting from alleged sexual predator who was transferred to California; "the Milwaukee Archiodecese purposefully availed itself of forum benefits by engaging in intentional conduct expressly aimed at California. That conduct consisted of ridding itself of Widera by sending him to California.").[2]

---

[2] Acerchem's legal authorities on purposeful availment simply miss the point. Notably, none of them involved infringement of copyright or other intellectual property. Only one of them is even a Ninth Circuit case, and it involved a single

Second, contrary to its protestations, Acerchem has in fact engaged in considerable business in California.  Its employees – including Acerchem's declarant Donald Tang -- attend trade shows in Anaheim, and have met with and had business discussions with Plaintiffs' employees, and shipped product samples to Plaintiffs' offices in California.  *See* Abadee Decl., ¶¶ 10-13 and Exs. F-I; Szucs Decl., ¶¶ 2-9, Exs. A-H.

In addition, Acerchem imports significant amounts of rice protein through the Ports of Los Angeles, Long Beach, and Oakland.  *See* Declaration of Jonathan Reed Powell ("Powell Decl."), ¶ 2 and Ex. A (compiling records from U.S. Customs and Border Protection showing nine separate shipments totaling over 150,000 kilograms in 2015 alone, and nine more shipments in 2013-14.

Lastly, Acerchem markets its products to California residents, as shown by its admission that some of the "target customers," Motion, p. 7 who received the Infringing Email were located in California.  Indeed, the Infringing Email – which Mr. Tang admits is "from an employee of Acerchem UK named Elva Li promoting certain rice protein products," Tang Decl., ¶ 4 -- Acerchem holds itself out as doing business with the United States and specifically as having an office in Los Angeles.  The Infringing Email:

- Is titled "Rice Protein in private label with origin of UK&USS*Ireland*Spain*CN";

---

sales contract over the internet where the out-of-state defendant simply happened to sell his car to a California buyer; there was no targeting of California and no connection with the state other than that the buyer happened to live there, and in any event, contract cases are generally resolved under the "purposeful availment" test.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008).   The other cases involved the sending of a single spam email where the only connection to the forum state was that one recipient among many happened to live there, *see Fenn v. Mleads Enterprises, Inc.*  137 P.3d 706 (Utah 2006), or negotiations to hire employees to perform work in India, *see Consulting Engineer Corp. v. Geometric Ltd.*, 561 F.3d 273, 281 (4th Cir. 2009).

---

- Claims to have a USDA Organic certification;
- Lists the products as having a "Country of Origin" of "CN/UK/US";
- Lists the names of both Acerchem UK and Acerchem International, followed by "Japan*USA*UK*Spain*Holland*CN"; and
- Contains an email signature by Elva Li of Acerchem UK, listing what are presumably intended to be interpreted as office locations in "Cardiff*Rotterdam*Madrid*Japan*LosAngels[sic]*Shanghai"

By holding itself out as a company that is doing business in Los Angeles, Acerchem has purposefully availed itself of the benefits of doing so.[3]

### C.   The Claims Arise Out of Acerchem's Forum-Related Activities

The second prong is easily met because the claims here arise directly out of Acerchem's forum-related activities, i.e. its marketing of rice protein products, including but not limited to the Infringing Email.  Indeed, Acerchem does not appear to even dispute this prong.

### D.   The Exercise of Jurisdiction Here Is Reasonable

Because Plaintiffs have satisfied their burden on the first two prongs, the burden now "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802; *see also Metro-Goldwyn-Mayer*, 243 F.Supp.2d at 1091 n.12 ("An otherwise valid

---

[3] Certainly it is the case that, when speaking to potential customers, including those located in California, Acerchem's emails give a much different impression than Mr. Tang's testimony that Acerchem "engages in no business whatsoever in California, let alone anywhere in the United States."  Tang Decl., ¶ 6.
Any doubts regarding the factual basis for asserting jurisdiction are to be resolved in favor of the plaintiff; however, in the alternative, the Court could order Acerchem to submit to jurisdictional discovery.

1    exercise of jurisdiction is presumed to be reasonable, however, and the burden is
2    upon the defendant to 'present a compelling case' that it is not."), citing *Ballard v.*
3    *Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

4        Acerchem has fallen well short of making a "compelling" case on the seven
5    factors applied in the Ninth Circuit. *See Global Fresh* at *5 (listing factors).

6        The first factor, the extent of Acerchem's purposeful interjection into the
7    forum state, weighs heavily in Plaintiffs' favor. Acerchem targeted Plaintiffs'
8    California businesses with its Infringing Email, and should be held to account in
9    California for doing so. *See Sleep Science Partners*, 2009 WL 4251322 at *6
10   (finding purposeful interjection by defendant who knowingly infringed on
11   plaintiff's trade secrets and copyright and sold competing goods to California
12   consumers).

13       On the second factor, burden on the defendant, Acerchem simply asserts that
14   it would be burdensome for it to litigate in California, but offers no detail. This is
15   simply insufficient. "Unless the 'inconvenience is so great as to constitute a
16   deprivation of due process, it will not overcome clear justifications for the exercise
17   of jurisdiction.'" *Sleep Science Partners* at *6, quoting *Caruth v. Int'l*
18   *Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). In fact, Acerchem
19   regularly sends its employees to California to conduct business, so it is unclear
20   what great hardship would be inflicted by defending this action here.

21       On the third factor, "extent of conflict with the sovereignty of defendant's
22   state," Acerchem declares that "[t]he copyright laws of the United States and the
23   United Kingdom differ in many significant regards," and directs the Court to "see
24   generally" a treatise. Acerchem does not explain any of these supposedly
25   significant differences or explain how they matter to the exercise of jurisdiction
26   here. To the extent that there are any choice of law issues relevant to this action,
27   this Court is perfectly capable of resolving them without offense to the sovereignty
28   of the United Kingdom.

_____

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS - 14

The fourth factor, the forum state's interest in adjudicating the dispute, weighs heavily in Plaintiffs' favor. "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996).

Acerchem does not even offer an argument as to the fifth and sixth factors, the most efficient judicial resolution of the controversy and the importance of the forum to Plaintiffs' interest in convenient and effective relief.

Lastly, as to the existence of an alternative forum, Acerchem proposes that Plaintiffs could "conceivably seek relief in the courts of [England] under British copyright law." Motion, p. 8. This is tantamount to an admission that there is no alternative forum, because English courts would refuse to recognize Plaintiffs' rights under U.S. copyright law. But even if they would entertain such a claim, Acerchem offers no reason why those courts would be a superior alternative forum other than that – like every defendant – Acerchem would prefer to defend on its home court. That is insufficient. *See Columbia Pictures*, 106 F.3d at 289 ("Feltner's contentions – that he had more of a burden litigating in California than Columbia would have had in Florida, that Florida had a stronger interest than California in adjudicating the suit because he lived in Florida, and that Florida was the most efficient forum – are insufficient to meet his burden.").

### E.     In the Alternative, Jurisdiction Is Proper Based on National Minimum Contacts

For the reasons set forth above, Acerchem is subject to personal jurisdiction in California because it has purposefully directed tortious acts at that state and purposefully availed itself of the privileges of doing business there.

However, even if Acerchem did not have sufficient contacts with California specifically to maintain jurisdiction, this Court's exercise of jurisdiction would still be proper under Federal Rule of Civil Procedure 4(k)(2) based on its minimum

contacts with the United States as a whole.  "The effect of the Rule in cases such as this is that jurisdiction may be exercised over copyright claims against a foreign defendant where sufficient contacts with, or injury to, U.S. residents is alleged, even though there are not sufficient contacts with any single state to justify jurisdiction in that state."  *Metro-Goldwyn-Mayer*, 243 F.Supp.2d at 1094.

## III.   THE COMPLAINT STATES A CLAIM AGAINST ACERCHEM

Acerchem argues that Axiom's complaint should be dismissed because Axiom's copyright registrations were supposedly improperly classified as "literary works" (under Form TX) rather than "visual works" (under Form VA.)  This argument fails for two separate reasons.

First, it is entirely proper to claim authorship of artwork as part of a Form TX copyright registration.  As the Copyright Office advises applicants, authorship of a literary work can encompass artwork as well as text:

Literary Authorship

•      Text may include non-dramatic literary works such as books, periodicals, manuscripts, stories and poetry. (Note: titles, names, short phrases, and slogans are generally not protected by copyright.).

•      Editing consists of adding, revising, and/or deleting preexisting text.

•      Photograph(s) includes photographic illustrations, prints, and slides.

•      Artwork may include works such as two- or three-dimensional artwork, illustrative matter such as drawings, technical drawings, or other non-photographic pictorial representations.

See U.S. Copyright Office, "Help:  Author," available at http://www.copyright.gov/eco/help-author.html.  Thus, the U.S. Copyright Office – which is responsible for interpreting the Copyright Act and administering

registrations – specifically allows applicants to claim visual works under this category .

Second, even if the Court were to find that the copyright registrations "should have" been filed under Form VA as Acerchem contends, that would not be sufficient to invalidate the registrations at issue.  Errors in a deposit of a copyright application will not invalidate it unless there is intentional misrepresentation.  As the Copyright Act itself provides:

> (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless:
>
> (A) the inaccurate information was included on the application for the copyright registration with knowledge that it was inaccurate; and
>
> (B) the inaccuracy of the information, if known, would have caused the Register of copyrights to refuse registration.

An otherwise valid registration is not jeopardized by inadvertent, immaterial errors in an application.  *See Data Gen. Corp. v. Grumman Sys. Support Corp,* 825 F.Supp. 340 (D. Mass 1993).  Here, even if the applications were filed under the "wrong" form – and they were not – no material information was withheld or misstated, let alone intentionally.  The applications were filed under Form TX, the works were submitted as samples, the claims of authorship were made (i.e. text, photos, artwork, editing, etc.), and the Register reviewed the applications and approved all four for registration.  Significantly, the Register reviews applications only to determine whether "the material deposited constitutes copyrightable subject matter and [whether] the other legal and formal requirements … have been met." 17 U.S.C. § 410(a); Nimmer & Nimmer, § 721[A].  A misrepresentation is likely to affect the Register's decision only if it concerns the copyrightability of the work – and even Acerchem does not dispute that the works are copyrightable under

---

some category.  *Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 456 (2d Cir. 1989).

In fact, the classification of works into categories is a matter of administrative convenience, and not one of substantive rights.  Section 408(c)(1) of the Copyright Act provides:

> Administrative Classification and Optional Deposit—
> The Register of Copyrights is authorized to specify by regulation the administrative classes into which works are to be placed for purposes of deposit and registration, and the nature of the copies or phonorecords to be deposited in the various classes specified. This administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title.

In fact, even one of the authorities cited by Acerchem, *Jefferson Airplane v. Berkeley Systems, Inc.,* 886 F.Supp. 713(N.D. Cal. 1994), acknowledges that "[r]egistration in separate classes was intended to enhance the efficiency of the Copyright Office, and not to legally limit the scope of copyrighted material."

Neither *Jefferson Airplane* nor *Valley Entertainment, Inc. v Friesen*, 691 F. Supp.2d 821 (N.D. Ill. 2010) stands for the proposition urged by Acerchem, that registering in the "wrong" category is "fatal" to a copyright infringement claim.  In *Valley Entertainment*, the plaintiff owned a copyright in an arrangement of sheet music and lyrics ("PA" class copyright). The defendant was alleged to have infringed upon the master (sound recordings) of plaintiff's work.  The court held that a PA copyright applies to the underlying composition, not the "master" recording or physical embodiment of a musical performance, and "a Class PA copyright cannot, under the regulations, be construed to include the sound recording of the work."

---

Similarly, in *Jefferson Airplane*, the plaintiff owned a copyright registration in the *sound recordings* of a record album entitled "Thirty Seconds".  The defendant was alleged to have infringed on the *cover art* of the album.  In granting defendant's motion to dismiss, the court held that the album cover was not included in the plaintiff's registration.  "There is no mistaking the fact that the registration application unambiguously claims a copyright in "music" alone. No matter what is deposited with the Copyright Office, a work must be claimed before it can be considered registered."

In other words, the defect in *Jefferson Airplane* and *Valley Entertainment* was *not* that the plaintiffs filed in the "wrong" categories, it was that their registrations *did not cover* the elements that were infringed.  Here, as noted above, Plaintiffs' registrations do in fact cover the visual elements that Acerchem claims – without, it should be noted, any legal authority cited – they do not.

Accordingly, the motion to dismiss is without merit.

## IV.   CONCLUSION

For the reasons set forth above, the Court should deny the motion in its entirety.

DATED: June 15, 2015            LAPIDUS & LAPIDUS
                                A PROFESSIONAL LAW CORPORATION


                                _____/s/_____
                                JIM D. BAUCH
                                Attorneys for Plaintiffs
                                Axiom Foods, Inc. and Growing Naturals, LLC

---

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS - 19